W. M. Smith Electric Co. v. Commissioner.
W. M. Smith Electric Co. v. Commissioner
Docket No. 43399.
United States Tax Court
T.C. Memo 1954-94; 1954 Tax Ct. Memo LEXIS 152; 13 T.C.M. (CCH) 646; T.C.M. (RIA) 54199; July 7, 1954, Filed *152 Two individuals transferred assets which they owned equally between them to petitioner corporation in exchange for petitioner's stock. Held: 1. Petitioner acquired the assets in a tax free exchange within the meaning of section 112(b)(5) since immediately after the exchange the transferors were in control of petitioner. 2. The date of completion of the sale to others of part of the stock received by the transferors was not the decisive date for determining when "control" was acquired. Scientific Instrument Co., 17 T.C. 1253, followed. George E. Ray, Esq., 1018 First National Bank Building, Dallas, Tex., Julius H. Runge, Esq., and Oliver W. Hammonds, Esq., for the petitioner. J. Marvin Kelley, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion *153 TIETJENS, Judge: The Commissioner determined deficiencies in income tax of petitioner of $5,267.39 for the taxable year March 1, 1946 to December 31, 1946, and $18,127.57 for the calendar year 1947. The only question for decision is whether the transfer of property to petitioner in exchange for stock of petitioner was a nontaxable exchange under section 112(b)(5) of the Internal Revenue Code so that the basis of inventory acquired by petitioner is the basis the inventory had in the hands of the transferors. Findings of Fact The stipulated facts are so found and the stipulation adopted by reference. Petitioner is a corporation incorporated under the laws of Texas on or about March 26, 1946. Its income tax returns were filed for the taxable years with the collector of internal revenue at Dallas, Texas. Prior to March 4, 1946, H. B. Bickers and J. G. Hailey entered into negotiations with Walter M. Smith for the purchase of the business operated by Smith under the name of W. M. Smith Electric Co. On March 4, 1946, Bickers borrowed $15,150 from a Dallas bank on a 90-day note for use in the acquisition of the business. Robert B. Hincks cosigned the note *154 at the request of Hailey whose credit standing at the bank was such that he was not an acceptable maker. The understanding between Bickers and Hailey was that each would be equally liable on the note. On March 8, 1946, Hailey, Bickers, and Smith executed an agreement whereby the first two purchased from Smith the W. M. Smith Electric Co. as of March 1, 1946. The agreement to purchase the W. M. Smith Electric Co. called for the payment of $18,000 in cash plus the execution of notes by the buyers in the total amount of $31,500. The notes consisted of one-year notes in the amounts of $750 and $17,750 and a two-year note of $13,000. These notes were executed jointly by Hailey and Bickers. The notes were delivered and the cash paid over. The $18,000 cash was made up of the $15,150 borrowed from the bank by Bickers and $2,850 supplied by Bickers. Bickers and Hailey first began discussing the acquisition of the business with Smith late in 1945. During the discussions, Bickers and Hailey informed Smith and others that they intended to incorporate the business and to sell some of the stock to employees of the Texas Power and Light Company for whom Hailey worked in 1945. Early in 1946 *155 the operation of the business as a partnership was considered, but was rejected after discussion with Hincks, who was an attorney. On March 26, 1946, petitioner was organized. The authorized capital stock was 10,000 shares of no par common and 2,500 shares of $5 non-cumulative preferred stock. Only the common was entitled to vote. On April 16, 1946, a total of 8,615 shares of common stock and 1,115 shares of preferred stock were issued for a total subscription price of $97,650. The shares subscribed for by each of the parties subscribing to the capital stock of petitioner as set forth in the affidavit of incorporation were as follows: Preferred
Common
J. G. Hailey
649
4546
H. B. Bickers
381
3831
W. M. Smith
50
133
R. B. Hincks
35
105
1115
8615
Prior to incorporation Bickers and Hailey entered into an oral agreement which called for the issuance to Hailey of $18,000 face amount more stock than that issued to Bickers. This stock was to be held and was so held, in trust by Hailey equally for himself and Bickers and was to be used as collateral for the bank loan referred to above upon which, between themselves, they were equally liable. When *156 the loan was paid off, this $18,000 in stock was to be called by petitioner and thereafter the stock interests standing in the names of Bickers and Hailey would be equal. The affidavit of the incorporators filed with the Secretary of State of the State of Texas stated that the subscriptions of Smith and Hincks were paid in cash and that the subscriptions of Hailey and Bickers were paid by the conveyance to the corporation on March 26, 1946, of certain assets formerly owned by Smith, doing business as W. M. Smith Electric Co. Hailey did not put up any cash for his stock in the petitioner. Hailey's interest in the property which he and Bickers conveyed to petitioner was one-half, as was Bickers' interest. On various dates between April 29 and June 21, 1946, Hailey and Bickers sold 268 shares of preferred and 716 shares of common stock standing in Hailey's name to various persons for a total consideration of $18,000. Most of the sales were made by Hailey himself, but some were made by Bickers who had a state license to sell stock. $15,150 of the proceeds of the sales were used by Bickers to pay off the bank loan. Upon completion of these sales the stock holdings of Bickers and Hailey *157 were substantially the same and in the aggregate represented 68.34 per cent of the issued preferred stock and 88.92 of the issued common. On their individual income tax returns for 1946 neither Hailey nor Bickers reported any taxable gain with respect to the transfer to petitioner on March 26, 1946 by them of the property purchased from Smith under the March 8, 1946 agreement. Opinion The only question here is whether the basis to petitioner of the inventory transferred to it on March 26, 1946 is the cost to petitioner or whether the basis of the inventory is the same as it was in the hands of the transferors, Hailey and Bickers. This depends upon whether petitioner acquired the inventory in a nontaxable exchange under section 112(b)(5) of the Internal Revenue Code. [1]
*158 The nub of petitioner's contention is that the sale of the $18,000 excess stock by Hailey and Bickers was an integral step in the exchange transaction so that after the sale of that stock they no longer had the requisite 80 per cent control called for by section 112. Both parties rely on the principles stated in Scientific Instrument Co., 17 T.C. 1253, affd. (C.A. 6) 202 Fed. (2d) 155, as being dispositive of the case in their favor and we agree that the principles there stated are applicable here. In our opinion, however, his case must be decided for respondent. It is clear to us that immediately after Hailey and Bickers transferred the assets which they had acquired from Smith to petitioner they had "control" of petitioner within the contemplation of section 112. The question is whether the sale of the $18,000 face amount of stock which was issued to Hailey and held in trust by him for Bickers and himself, within 90 days after the transfer of the assets and by virtue of which sale Hailey and Bickers lost statutory "control" of petitioner, is to be considered an integral "step" in the exchange transaction so that the conclusive date on which "control" *159 is to be determined is the date on which the sale of that stock was concluded rather than the date on which the exchange of assets for stock took place. Scientific Instrument Co., supra.We think it was not. The effectiveness of the transfer of assets was in no way dependent upon the subsequent sale of the stock. Neither was there any binding agreement in existence at the time of the transfer that such stock would be sold to persons other than the transferors. Such a sale was possibly contemplated but we do not deem that to be a controlling factor. As a matter of fact, the plan was that this stock would be issued primarily for the purpose of collateralizing the bank loan and that upon payment of that loan the stock would be retired by petitioner - in that event "control" of petitioner as it existed at the time the assets were transferred would remain undisturbed. There was no obligation on the part of Hailey and Bickers to sell the stock in order to pay off the loan even though that is what happened. After the transfer of the assets in question to petitioner there was no assurance or requirement that "control" of petitioner would ever be relinquished by Hailey and Bickers *160 and on the authority of Scientific Instrument Co., supra, we hold for respondent. Petitioner makes an alternative contention, that Hailey and Bickers failed to receive stock of petitioner substantially in proportion to their respective interests in the property transferred by them to petitioner as is required for a tax-free exchange. We find no merit in this contention. They owned the property transferred equally between them. The stock issued to them, including the $18,000 excess issued to Hailey and held by him in trust for both, in exchange for the assets in question, was owned by both in substantially equal proportions, and we think the statutory requirement that "the amount of the stock * * * received by each is substantially in proportion to his interest in the property prior to the exchange" was satisfied. Decision will be entered under Rule 50. Footnotes
1. SEC 112. RECOGNITION OF GAIN OR LOSS. * * *
(b) Exchanges Solely in Kind. - * * *
(5) Transfer to Corporation Controlled by Transferor. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * *
(h) Definition of Control. - As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.↩